E-FILED
Friday, 20 December, 2013  04:21:17 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | |
|---|---|
| JERRY L. COBB, individually and on behalf of all others similarly situated,<br><br>                      Plaintiff,<br><br>  -v-<br><br>IKO MANUFACTURING INC., a Delaware corporation;<br>IKO INDUSTRIES INC., a Delaware corporation;<br>IKO INDUSTRIES LTD., a Canadian corporation;<br>IKO MIDWEST INC., a Delaware corporation; and<br>IKO PRODUCTION INC., a Delaware corporation,<br><br>                    Defendants. | Case No. _____<br>MDL No. 09-md-2104 |

## CLASS ACTION COMPLAINT
## AND JURY DEMAND (EQUITABLE RELIEF SOUGHT)

1.    **NOW COMES** Plaintiff,  JERRY L. COBB, on behalf of himself and a class of all other persons similarly situated (collectively "the Class"), by and through his attorneys, HALUNEN & ASSOCIATES, and for his Complaint against Defendants, IKO Manufacturing Inc., IKO Industries Inc., IKO Industries Ltd., or IKO Midwest Inc., and IKO Production Inc., complains as follows:

## NATURE OF ACTION

**A. Background**

2.      This is a consumer class action on behalf of all persons and entities who purchased organic-based or matted shingles manufactured and/or distributed under various trade names by IKO Manufacturing Inc., IKO Industries Inc., IKO Industries Ltd., or IKO Midwest Inc., and IKO Production, Inc. (collectively "IKO" or "Defendants").

3.      Upon information and belief, IKO sold or distributed organic shingles throughout the United States (hereinafter collectively "Shingles" or "IKO Shingles"), but primarily in the northern and south-eastern United States between approximately 1979 and 2008.

4.      All IKO Shingles are manufactured using the same basic formula: a base layer of organic felt saturated with asphalt, a middle layer of an oxidized asphalt coating, and a top layer of mineral granules with a strip of asphalt sealant.

5.      Defendants manufactured and marketed its Shingles under various brands and product names including but not limited to: Château, Renaissance, Renaissance XL, Aristocrat, Total, Armour Seal, Superplus, Armour Lock, Royal Victorian, New Englander, Imperial Seal 20, Cathedral XL, Ultralock 25, Armour Plus 20, Armourtite, Cambridge Ultra Shadow, Crowne 30, Vista, Supreme 20, Fastlock 25, Leading Edge, Nordic, Quantum 35, Seville 25, Superlock, Superseal, and Skyline for sale nationwide.  Defendants marketed and sold the organic Shingles to tens of thousands of consumers throughout the United States.

6.      IKO markets and warrants all the Shingles as durable, and as offering long-lasting protection for a specified life ranging from 20 to 50 years, or in some cases, for a lifetime.  The industry and consumers recognize the warranty nomenclature as having the

2

following meaning: a shingle with a 25-year warranty is referred to as a "25-year shingle" and will last for 25 years.  Additionally, shingles with a 20-year warranty are generally priced at a lesser amount than shingles with a 50-year warranty.

7.      IKO's sales brochures and marketing literature, which were widely distributed to building and roofing professionals who installed shingles and generally available to Plaintiff and the Class at the time of sale, state the Shingles are, among other things, "[t]ime-tested and true" and "an excellent choice for exceptional roofing value."  In actuality, these IKO Shingles do not stand the test of time and, given the early and severe deterioration that requires premature tear-off and replacement; they prove to be of inferior value when compared to fiberglass shingles.

8.      IKO's sales brochures, marketing literature, and packaging furthermore claim that IKO Shingles meet very specific industry specifications and standards for sampling, testing and analysis.  In particular, IKO represented to consumers that their shingles met ASTM D225-07 specifications for organic felt asphalt shingles and that IKO Shingles adhered to ASTM D228 testing procedures for sampling, examination, physical testing, and analyses. In fact, IKO did not adhere to ASTM D225-07 specifications and failed to comply with the advertised testing procedures.

9.      IKO widely distributed documents to building and roofing professionals who installed shingles, and made documents generally available to Plaintiff and the Class, that described its warranty as "IRON CLAD" and further claimed IKO was "Setting the Standard" for "quality, durability, and innovation."  IKO Shingles have not lived up to that promise.

10.     IKO represented in documents and marketing materials that its shingles would last for a specified period of time without problems, or the company would remedy the

situation.  IKO makes this representation before purchase and at the time of purchase via sales brochures, marketing materials (including but not limited to store displays, sales seminars, and training materials), and on the Shingles' packaging.

11.     The Shingles manufactured and sold by IKO are defectively designed and manufactured such that they fail prematurely causing damage to the underlying structures (including roof, structural elements, interior walls and ceilings) and other property of Plaintiff and members of the Class.  The Shingles are non-conforming to industry standards.

12.     The defects present in IKO Shingles are so severe that Plaintiff and members of the Class must repair or replace their roofs sooner than reasonably expected by ordinary consumers who purchase shingles generally and by consumers who purchased these Shingles specifically.

13.     All of IKO's organic Shingles are uniformly defective such that Plaintiff's and Class members' Shingles are failing before the time periods advertised, marketed, and guaranteed by IKO or otherwise expected by ordinary consumers purchasing Shingles.

14.     IKO knew or reasonably should have known the Shingles are defective as designed and manufactured such that they fail prematurely due to moisture invasion.  The organic materials contained in the Shingles are susceptible to becoming wet, moist, saturated, or otherwise invaded by water.  Further degradation is caused when the wet, moist, or saturated organic material goes through repeated freeze and thaw cycles.  The degradation continues as the Shingles lose the ability to hold granules further subjecting the organic content of the Shingles to moisture.  Shingles are then further degraded when subjected to the sun as the drying of the content eventually causes the Shingles to lose shape and deform.  The outward manifestation of the Shingle deterioration and deformation is cracking, curling,

blistering, fishmouthing, clawing, and discoloration.  At the extreme, the Shingles break at the edges or blow off roofs.  In short, the Shingles do not perform in accordance with the reasonable expectations of consumers that such products be durable and suitable for use as a roofing product.

      **15.**     The following photos, attached hereto in thumbnail form and in full as **Exhibit A**, are a sampling of the problems Plaintiff and the Class have experienced with their IKO Shingles:







**B. IKO's Warranty**

16.      IKO sells warranties with its Shingles.  The warranties are marketed and create an expectation within the industry and by ordinary consumer purchases that the Shingles will last as long as the warranty period.  The warranty furthers these expectations by guaranteeing that a Shingle will last for a specified period of time.  A sample of one of IKO's written warranties is attached hereto as **Exhibit B**.  IKO generally charged more to the Class as the warranty period increased in length thereby creating the expectation that a longer warranty period advertised and guaranteed had meaning.

17.      IKO established a warranty period to be advertised and guaranteed for its Shingles without conducting appropriate testing to determine if the Warranty period was supported by actual or simulated use.  As to some of the Shingles, it appears that IKO increased the duration of the warranty period without making any substantial changes to the design or manufacturing process of its Shingles and without further or appropriate testing.

18.      IKO did not use a process or formula for determining the length of its warranties, but rather extended the length of warranties as the business environment changed so that IKO would not be put at a marketing disadvantage vis-à-vis its competitors.

19.      Generally, as IKO's competitors began to offer longer warranty periods for similar shingles, IKO lengthened the warranty period of its Shingles without adequate or appropriate testing to determine if the increase of warranty was justified, supportable, or otherwise true.

**C. IKO's Handling of Warranty Claims**

20.      IKO uses an overly burdensome warranty claims process that is designed to deter warranty claimants from filing, and reduce the number of "valid" claims that it receives.

6

Much of the information that IKO requires is not available to homeowners, especially those who purchased a new home from a builder, or were not the original owners of the roof.

**21.** IKO will not consider a warranty claim until a customer submits *all* of the following information to the company:

    a. Proof of purchase of an IKO product indicating the type of shingle, quantity, and date in which a roof was applied;

    b. Proof of purchase indicating the claimant is the original owner of the home;

    c. Date shingles were applied;

    d. Number of shingles applied;

    e. Number of shingles involved in the claim;

    f. Type of roof deck;

    g. The number of layers of shingles on the roof;

    h. The slope of the roof deck;

    i. The number of vents on the roof;

    j. Photographs of the roof that were not taken from a digital camera; and

    k. Two full shingle samples (which requires a roofing professional to carefully remove in-service shingles from the claimant's roof).

**22.** Instead of providing compensation based upon the terms of the warranty, IKO intentionally misleads warranty claimants, including Plaintiff and the Class, by requiring them to sign a Goodwill Release of Warranty (hereinafter "Goodwill Release") in exchange for cash compensation.

7

23. The consideration offered by IKO in exchange for a signed Goodwill Release is woefully inadequate to compensate claimants for IKO's defective Shingles because it does not cover the full cost of replacement shingles, labor, disposal, or other related costs incurred by Plaintiff and the Class.

24. The Goodwill Release is not compensation under the terms of the warranty, but rather "represents the compromise of a disputed claim." In essence, it is IKO's routine business practice to dispute every warranty claim submitted to the company, even though it had actual or constructive notice that its Shingles are defective pursuant to their very own requirements. A sample of IKO's Goodwill Release is attached hereto as **Exhibit C**.

25. The Goodwill Release operates as a waiver of the warranty, and releases IKO from "any and all claims, causes of action, agreements, promises, damages and demands, . . . of any kind or nature whatsoever . . . which the [warranty claimant] ever had or now has against IKO . . . ." **Exhibit C**.

26. The Goodwill Release is IKO's attempt to "buy off" any future claims relating to its Shingles and relieve itself of the burden and responsibility of future warranty claims concerning any possible remaining Shingles on a warranty claimant's roof.

27. The consideration offered for an executed Goodwill Release is based upon a fraction of the cost of replacing only the shingles that exhibit the defect at that time, but the Goodwill Release waives the warranty on the entire roof, regardless of whether the claimant was compensated for the release.

8

**D. IKO's Ongoing Refusal to Notify Its Customers of the Defects Associated With Its Shingles**

28.     Since 1984, IKO has received thousands of warranty claims alleging a manufacturing or design defect in the Shingles.

29.     A substantial percentage of all warranty claims received by IKO relate to its organic Shingles.

30.     An inordinate percentage of all warranty claims denied by IKO relate to claims made about the Shingles.

31.     Despite receiving a litany of complaints from consumers, such as Plaintiff and other members of the Class, IKO has refused to convey effective notice to consumers about the defects, and refused to repair defective roofs fully or repair the property damaged by the premature failure of its product.

32.     IKO's response to customers' warranty submissions is woefully inadequate under these circumstances in that it limits Plaintiff's and Class members' recovery to replacement costs of individual Shingles piece by piece and excludes costs of labor to replace the Shingles.

33.     The average compensation paid on a non-organic shingles claims is greater than the average compensation paid on an organic Shingles claim.

**E. IKO's Acts and Omissions Have Damaged Plaintiff and the Class**

34.     As a result of the defects and failures alleged herein, Plaintiff and the Class have suffered actual damages.  The Shingles on their homes, buildings, and other structures have and will continue to fail prematurely compared to the time period expected by ordinary consumers, the time period marketed by IKO, and the time period warranted by IKO,

resulting in damage to the underlying roof and housing structure and requiring them to expend thousands of dollars to repair the damage associated with the incorporation of the Shingles into their homes, buildings, and other structures, and to prevent such damage from continuing. Damage caused by the defective Shingles includes, but is not limited to: damage to underlying felt, damage to structural roof components (including the rotting and degradation of plywood sheathing, trusses, and rafters), damage to plaster and sheetrock, and damage to walls, ceiling, and other components either as a result of the failing Shingles themselves or from the process of removal and replacement of the defective Shingles.

35.     Because the defects in the Shingles are latent and not detectable until manifestation, Plaintiff and the Class members were not reasonably able to discover their Shingles were defective until after installation, despite the exercise of due diligence.  Indeed, at the time of first sale, building and construction professionals would not be able to detect the latent defect unless they subjected the Shingles to their own testing, modeling, or analysis.

36.     The relatively small size of the typical individual Class member's claims, and because most homeowners and/or property owners have only modest resources, makes it unlikely that individual Class members could afford to seek a full and fair recovery against IKO on their own.  This is especially true in light of the size and resources of IKO.  A class action is, therefore, the only reasonable means by which Class members can obtain relief from Defendants.

37.     The organic asphalt Shingles manufactured and sold by IKO, are defectively designed and manufactured such that they fail prematurely causing damage to the property of Plaintiff and members of the Class and forcing them to repair or replace their roofs sooner than reasonably expected, marketed, and warranted.

**38.**     Plaintiff seeks to recover, for himself and the Class, the costs of repairing the damage to their property and replacing their roofs, or injunctive relief forcing IKO to replace their defective roofs.

**PARTIES**

**39.**     At all relevant times Plaintiff and class representative Jerry L. Cobb was a citizen of West Virginia.

**40.**     In January of 2000, Plaintiff decided to outfit his home with Renaissance shingles, a brand name of IKO organic Shingles that is backed by a 25 year warranty. Plaintiff chose this particular type and style of shingle based in part on the warranty with which it is advertised.

**41.**     At the time of purchase, IKO represented, marketed, and created the expectation that the Shingles would last for at least 25 years.

**42.**     Plaintiff first became aware of the problem with his Shingles in the Fall of 2011 when he was cleaning out his gutters.  The following spring of 2012 several shingles blew off his roof in a storm and he was forced to replace his roof in November of 2012. Plaintiff had no reasonable way to discover that the Shingles were defective until shortly before the filing of this Complaint.

**43.**     Plaintiff notified IKO that his Shingles are defective.  In response, IKO offered to pay Plaintiff a total of $931.90 representing the replacement costs for 125 bundles of shingles and the sample shingle reimbursement.  In order to receive this payment, Plaintiff was required to sign a "Goodwill Release of Warranty" that would waive any claim to further compensation due or owing Plaintiff resulting from IKO's defective product.

**44.** The problems with Plaintiff's roof were so bad that he had to repair portions of the roof at his own expense. Additionally, the continued deterioration required Plaintiff to prematurely replace his roof to avoid further damage to his home. Had the consumer expectations been met, the cost associated with repairs and eventual replacement would not be expected to be incurred for at least a decade. These consumer expectations were reasonably formed based on IKO's marketing and warranty of the Shingles.

**F.   IKO Defendants**

**45.** Defendant IKO Manufacturing Inc. is a Delaware corporation and operates a manufacturing plant in Wilmington, Delaware. IKO is a leading North American manufacturer of roofing materials. The company operates manufacturing plants in the United States, Canada, and Europe.

**46.** Defendant IKO Industries Ltd. is an Alberta corporation and leading North American manufacturer and distributor of roofing materials and the parent company of Defendant IKO Manufacturing. IKO Industries Ltd. is the owner of several patents that may apply to the Shingles manufactured by IKO Manufacturing. The company operates manufacturing plants in Canada, and its Shingles were distributed in the United States.

**47.** Defendant IKO Midwest, Inc. is a Delaware corporation with significant business operations located in Kankakee, Illinois. IKO Midwest, Inc. manufactures, distributes, and sells IKO Shingles throughout the United States.

**48.** Defendant IKO Industries, Inc. is a Delaware corporation that imports Canadian-made IKO Shingles to the United States.

**49.** Defendant IKO Production, Inc. is a Delaware corporation with significant business operations in Wilmington, Delaware, where it manufactures, distributes, or sells IKO Shingles.

## JURISDICTION AND VENUE

**50.** IKO, through its various subsidiaries and affiliates, operates manufacturing plants in the United States, Canada, and Europe and has significant business operations in West Virginia, where it sells, markets, and services IKO Shingles and has sufficient contact with West Virginia or otherwise intentionally avails itself to the laws and markets of West Virginia, so as to sustain this Court's jurisdiction over Defendants.

**51.** Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d) because the vast majority of class members are citizens of a state different from the home state of Defendants, and, upon information and belief, the amount in controversy exceeds five million dollars ($5,000,000).

**52.** Venue is proper in this district pursuant to 28 U.S.C. § 1391 *et seq.* because a substantial part of the events or omissions giving rise to this claim occurred in Lewis County, West Virginia.

## CLASS ACTION ALLEGATIONS

**53.** This action is brought and may be maintained as a nationwide class action pursuant to Federal Rule of Civil Procedure 23, and case law thereunder, on behalf of Plaintiff and all others similarly situated, with the Nationwide Class defined as follows:

> All individuals and entities that have owned, own, or acquired homes, residences, buildings or other structures physically located in the United States, on which organic IKO shingles are or have been installed since 1979. "Organic IKO shingles" is defined as all organic shingles manufactured or distributed by Defendants.

> Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest of Defendants, and Defendants' legal representatives, assigns and successors.  Also excluded are the judge to who this case is assigned and any member of the judge's immediate family.

54.    Alternatively or in addition to the Nationwide Class claims, Plaintiff brings this action under Federal Rule of Civil Procedure 23 on behalf of himself and a state-wide West Virginia Class defined as:

> All individuals and entities that have owned, own, or acquired homes, residences, buildings or other structures physically located in the state of West Virginia, on which organic IKO shingles are or have been installed since 1979.  "Organic IKO shingles" is defined as all organic Shingles manufactured or distributed by Defendants.  Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest of Defendants, and Defendants' legal representatives, assigns and successors.  Also excluded are the judge to who this case is assigned and any member of the judge's immediate family.

55.    Plaintiff reserves the right to re-define the Class(es) prior to class certification.

56.    While the precise number of Class members is unknown to Plaintiff, upon information and belief, Plaintiff believes the number is well in excess of 1,000 and the Class likely includes many thousands such that joinder is impracticable.  The true number of Class members is likely known by Defendants.  Disposition of these claims in a single class action will provide substantial benefits to all parties and the Court.

57.    The claims of the representative Plaintiff are typical of the claims of the Class in that the representative Plaintiff, and all Class members, own homes, residences, or other structures on which defective Shingles manufactured by IKO have been installed.  Those Shingles have failed, and will continue to fail, prematurely.  The representative Plaintiff, like all Class members, has been damaged by IKO's conduct in that he has incurred or will incur

14

the costs of repairing or replacing his roof and repairing the additional property damaged by the Shingles' premature failure.  Furthermore, the factual bases of IKO's conduct is common to all Class members and represents a common thread of deliberate, fraudulent and negligent misconduct resulting in injury to all members of the Class.

**58.**    There are numerous questions of law and fact common to Plaintiff and the Class.  Those questions predominate over any questions that may affect individual Class members, and include the following:

a.   Whether IKO Shingles are defective in that they fail prematurely and are not suitable for use as an exterior roofing product for the length of time advertised, marketed and warranted;

b.   Whether the Shingles are defectively designed or manufactured;

c.   Whether IKO knew or should have known of the defective nature of the Shingles;

d.   Whether the Shingles failed to perform in accordance with the reasonable expectations of ordinary consumers;

e.   Whether IKO properly instructed consumers about the likelihood of premature failure;

f.   Whether the Shingles fail to perform as advertised and warranted or expected by an ordinary consumer;

g.   Whether IKO's conduct in marketing and selling its Shingles involved misrepresentations, intentional omissions, or was otherwise unfair and deceptive;

h.   Whether Plaintiff and the Class are entitled to compensatory, exemplary and statutory damages, and the amount of such damages;

15

i.  Whether IKO should be declared financially responsible for notifying all Class members about their defective Shingles and for all damages associated with the incorporation of such Shingles into Class members' homes, residences, buildings, and other structures; and

j.  Whether IKO has changed or altered is warranty program without notice the Plaintiff and the Class.

**59.**  Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff has retained counsel with substantial experience in prosecuting statewide, multistate and national consumer class actions, actions involving defective products, and specifically, actions involving defective construction materials.  Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class they represent, and have the financial resources to do so.  Neither Plaintiff nor his counsel has any interest adverse to those of the Class.

**60.**  Plaintiff and the members of the Class have suffered and will continue to suffer harm and damages as a result of IKO's conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, the vast majority of the Class members likely would find the cost of litigating their claims to be prohibitive, and would have no effective remedy at law.  Because of the relatively small size of the individual Class member's claims, it is likely that only a few Class members could afford to seek legal redress for IKO's conduct.  Further, the cost of litigation could well equal or exceed any recovery. Absent a class action, Class members will continue to incur damages without remedy.  Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation, in that class treatment would conserve

16

the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

**ESTOPPEL FROM PLEADING THE STATUTE OF LIMITATIONS**

61.     IKO knew or reasonably should have known the Shingles were defective prior to the time of sale, and intentionally concealed that material information and the truth concerning their product from Plaintiff and the general public, while continually marketing the Shingles as dependable products.  Defendants' acts of fraudulent concealment include failing to disclose that its Shingles were defectively manufactured and would deteriorate in less than their expected lifetime, leading to damage to the very structures they were purchased to protect.

62.     Because the defects in the Shingles are latent and not detectable until manifestation, Plaintiff and the Class members were not reasonably able to discover their Shingles were defective and unreliable until after installation, despite their exercise of due diligence.

63.     Plaintiff had no reasonable way to discover this defect until shortly before Plaintiff filed his original complaint.

64.     Defendants had a duty to disclose that its Shingles were defective, unreliable and inherently flawed in their design and/or manufacturer.

**FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS**

**(Breach of Express Warranty)**

65.     Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

66.    Defendants marketed and sold their Shingles into the stream of commerce with the intent that the Shingles would be purchased by Plaintiff and members of the Class.

67.    Defendants expressly warranted that its Shingles are permanent, impact resistant, and would maintain their structural integrity.  Defendants' representations through its written warranties regarding the durability of, and the quality of the Shingles created express warranties that became part of the basis of the bargain Plaintiff and members of the Class entered into when they purchased the Shingles.

68.    Express warranties created by IKO go beyond the limited warranties IKO relies upon.  IKO also creates express warranties on the Shingles packaging and in product brochures and marketing materials.

69.    Defendants expressly warranted that the structural integrity of the Shingles purchased by Plaintiff and Class members would last at least 20 years and as long as a lifetime.

70.    Defendants breached their express warranties to Plaintiff and the Class in that Defendants' Shingles are neither permanent nor impact resistant and did not, and do not, maintain their structural integrity and perform as promised.  Defendants' Shingles crack, split, curl, warp, discolor, delaminate, blow off the roof, deteriorate prematurely, and otherwise do not perform as warranted by Defendants; and they have caused or are causing damage to the underlying roof elements, structures or interiors of Plaintiff's and Class members' homes, residences, buildings and structures.

71.    Defendants' warranties fail their essential purpose because they purport to warrant that the Shingles will be free from structural breakdown for at least 20 years to as

much as a lifetime when, in fact, Defendants' Shingles fail far short of the applicable warranty period.

72.     Moreover, because the warranties limit Plaintiff's and Class members' recovery to replacement of the Shingles piece by piece, with replacement labor not included, Defendants' warranties are woefully inadequate to repair and replace failed roofing, let alone any damage suffered to the underlying structure due to the inadequate protection provided by the IKO Shingles.  The remedies available in Defendants' warranties are limited to such an extent that they do not provide a minimally adequate remedy.

73.     The limitations on remedies and the exclusions in Defendants' warranties are unconscionable and unenforceable.

74.     Defendants have denied or failed to pay in full the warranty claims or has not responded to warranty claims.

75.     As a result of Defendants' breach of their express warranties, Plaintiff and the Class have suffered actual damages in that they purchased and installed on their homes and other structures an exterior roofing product that is defective and that has failed or is failing prematurely due to moisture penetration.  This failure has required or is requiring Plaintiff and the Class to incur significant expense in repairing or replacing their roofs.  Replacement is required to prevent ongoing and future damage to the underlying roof elements, structures or interiors of Plaintiff's and Class members' homes and structures.

76.     Plaintiff on behalf of himself and all others similarly situated, demands judgment against Defendants for compensatory damages for himself and each member of the Class, for the establishment of the common fund, plus attorneys' fees, interest and costs.

## SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS

### (Breach of Implied Warranties of Merchantability and
### Fitness for a Particular Purpose)

**77.**     Plaintiff incorporates by reference each of the allegations contained in all of the preceding paragraphs of this Complaint.

**78.**     At all times mentioned herein, Defendants manufactured or supplied IKO Shingles, and prior to the time said Shingles were purchased by Plaintiff, Defendants impliedly warranted to Plaintiff, and to Plaintiff's agents, that the product was of quality and fit for the use for which it was intended.

**79.**     Plaintiff and Plaintiff's agents relied on the skill and judgment of the Defendants in using the aforesaid product.

**80.**     The product was unfit for its intended use and it was not of merchantable quality, as warranted by Defendants, in that it had propensities to break down and fail to perform and protect when put to its intended use.  This product failure caused Plaintiff to sustain damages as herein alleged.

**81.**     The product was similarly unfit for its particular purpose.  IKO manufactured its Shingles in a cold weather climate, and distributed, marketed, and sold the Shingles in cold weather climates.  IKO knew, or should have known, that its Shingles would be subjected to subzero temperatures, snow, and sleet and that the Shingles would be subjected to freeze-thaw cycles for a substantial period of each year.

**82.**     After Plaintiff was made aware of Plaintiff's damages as a result of the aforesaid product, notice was duly given to Defendants of the breach of said warranty.

83. IKO failed to provide adequate remedy and added additional terms to the warranties which independently cause the purported warranty to fail its essential purpose, thereby permitting remedy under implied warranties.

84. As a direct and proximate result of the breach of said warranties, Plaintiff and the Class members suffered and will continue to suffer loss as alleged herein in an amount to be determined at trial.

85. Plaintiff on behalf of himself and all others similarly situated, demand judgment against Defendants for compensatory damages for himself and each member of the Class, for the establishment of the common fund, plus attorneys' fees, interest and costs.

### THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS

### (Violation of West Virginia Consumer Credit and Protection Act)

86. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint.

87. Defendant is the manufacturer, marketer, seller and/or distributor of the Shingles.

88. The conduct described above and throughout this Complaint took place within the State of West Virginia and constitutes unfair methods of competition and unfair or deceptive acts or practices under §46A-6-102(7),(B),(L), and (M) and is unlawful according to §46A-6-104 of the West Virginia Consumer Credit and Protection Act (hereinafter, "CCPA"). West Virginia Code chapter 46A Article 6 sections 101 *et seq.*

89. The CCPA applies to the claims of all the Class members because the conduct which constitutes violations of the CCPA by the Defendants occurred within the State of West Virginia.

21

**90.**     In violation of the CCPA, Defendants omitted and/or concealed material facts from Plaintiff and the Class regarding the quality, characteristics, benefits and/or uses of the Shingles.

**91.**     The omissions described herein were likely to deceive consumers into purchasing the Shingles.

**92.**     As a direct and proximate cause of the violation of the CCPA, described above, Plaintiff and the Class have been injured in that they have purchased the defective Shingles for personal, family, or household purposes based on nondisclosure of material facts alleged above.

**93.**     Defendants knew or should have known that the Shingles were defective, would fail prematurely, were not suitable for use as an exterior roofing product, and otherwise were not as warranted and represented by Defendants.

**94.**     Defendants deceived and continue to deceive consumers. This conduct constitutes unfair or deceptive acts or practices within the meaning of the CCPA. This illegal conduct is continuing, with no indication that Defendants will cease.

**95.**     Defendants' actions in connection with the manufacturing, distributing, and advertising of the Shingles as set forth herein evidences a lack of good faith, honesty in fact, and observance of fair dealing so as to constitute unconscionable commercial practices, in violation of the CCPA.

**96.**     Defendants acted willfully, knowingly, intentionally, unconscionably and with reckless indifference when it committed these acts of consumer fraud.

**97.**     In accordance with section 106(b) of the CCPA, Plaintiff as the consumer has informed Defendants as seller in writing sent by certified mail of the alleged violation and

provided twenty days from the day of receipt to offer cure.  Either no cure was offered or the cure was refused outright.

98.     As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiff and the Class will suffer damages, which include, without limitation, cost to inspect, repair and/or replace their Shingles and other property in an amount to be determined at trial.

99.     As a result of the acts of consumer fraud described above, Plaintiff and the Class have suffered ascertainable loss, actual damages that include the purchase price of the products, for which Defendants are liable to the Plaintiff and the Class for their ascertainable losses, plus attorney's fees and costs, along with equitable relief prayed for herein in this Complaint.

## FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

### (Breach of Contract)

100.     Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

101.     Plaintiff and the Class members have entered into certain contracts and warranty agreements with Defendants, including an express warranty.  Pursuant to these contracts and agreements, including the express warranty, Defendants would provide Plaintiff and the Class members with Shingles that were of merchantable quality and fit for the use for which they were intended.  Defendants were further obligated pursuant to the express warranty to repair or replace any defects or problems with the Shingles that Plaintiff and the

Class members experienced.  In exchange for these duties and obligations, Defendants received payment of the purchase price for these Shingles from Plaintiff and the Class.

102.         Plaintiff and the Class satisfied their obligations under these contracts, warranties, and agreements.

103.         Defendants failed to perform as required by the express warranty and breached said contracts and agreements because they provided Plaintiff and the Class with Shingles that were defective and unfit for their intended use and failed to appropriately repair or replace the Shingles.

104.         As a result of the foregoing, Plaintiff and the Class members are entitled to compensatory damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

### (Fraudulent Concealment)

105.         Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

106.         At all times mentioned herein, Defendants, through their experience, were in a position of superiority to Plaintiff and the class members and as such had the duty and obligation to disclose to Plaintiff the true facts and their knowledge concerning the IKO Shingles; that is that said product was defective, would prematurely fail, and otherwise were not as warranted and represented by Defendants.  Defendants made the affirmative representations as set forth in this Complaint to Plaintiff, the Class, and the general public prior to the date Plaintiff purchased the IKO Shingles, while at the same time concealing the

material defects described herein.  All of these facts were material to the consumers' (such as Plaintiff's) purchase decisions.

107.     The material facts concealed or not disclosed by IKO to Plaintiff and the Class are material facts in that a reasonable person would have considered those facts to be important in deciding whether or not to purchase IKO's Shingles.

108.     At all times mentioned herein, Defendants intentionally, willfully, and maliciously concealed or suppressed the facts set forth above from Plaintiff and with the intent to defraud as herein alleged.

109.     At all times mentioned herein, Plaintiff and members of the Class reasonably relied on Defendants to disclose those material facts set forth above.   If Defendants had disclosed the above facts to Plaintiff and Class and had they been aware of said facts, they would have either negotiated additional warranty coverage, negotiated a lower price to reflect the risk or simply avoided the risk all together by purchasing different shingles

110.     IKO continued to conceal the defective nature of its Shingles even after members of the Class began to report problems.  Indeed, IKO continues to cover up and conceal the true nature of the problem.

111.     As a result of the previous and continued concealment or suppression of the facts set forth above, Plaintiff and the Class members sustained damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

### (Negligence)

112.     Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

25

**113.**     Defendants had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the formulation, testing, design, manufacture, and marketing of the Shingles.

**114.**     Defendants breached their duty to Plaintiff and the Class by designing, manufacturing, advertising and selling to Plaintiff and the Class a product that is defective and will fail prematurely, and by failing to promptly remove the Shingles from the marketplace or to take other appropriate remedial action.

**115.**     Defendants knew or should have known that the Shingles were defective, would fail prematurely, were not suitable for use as an exterior roofing product, and otherwise were not as warranted and represented by Defendants.

**116.**     As a direct and proximate cause of Defendants' negligence, Plaintiff and the Class have suffered actual damages in that they purchased and installed on their homes, residences, buildings and other structures an exterior roofing product that is defective and that fails prematurely due to moisture penetration.  These failures have caused and will continue to cause Plaintiff and the Class to incur expenses repairing or replacing their roofs as well as the resultant, progressive property damage.

**117.**     Plaintiff on behalf of himself and all others similarly situated, demand judgment against Defendants for compensatory damages for himself and each member of the Class, for establishment of a common fund, plus attorney's fees, interest and costs.

## SEVENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

### (Unjust Enrichment)

**118.**     Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

**119.**　　　　Substantial benefits have been conferred on Defendants by Plaintiff and the Class by purchasing IKO shingles, and Defendants have knowingly and willingly accepted and enjoyed these benefits.

**120.**　　　　IKO either knew or should have known that the payments rendered by Plaintiff and the Class were given and received with the expectation that the IKO Shingles would perform as represented and warranted.  For IKO to retain the benefit of the payments under these circumstances is inequitable.

**121.**　　　　Defendants' acceptance and retention of these benefits under the circumstances make it inequitable for Defendants to retain the benefit without payment of the value to the Plaintiff and the Class.

**122.**　　　　Plaintiff and the Class are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants, plus interest thereon.

**123.**　　　　As a direct and proximate result of IKO's wrongful conduct and unjust enrichment, Plaintiff and the Class are entitled to restitution from, and institution of, a constructive trust disgorging all profits, benefits, and other compensation obtained by IKO, plus attorneys' fees, costs, and interest thereon.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, requests the Court to enter judgment against IKO, as follows:

A.　　　　Enter an order certifying the proposed Class (and subclasses, if applicable), designating Plaintiff as the named Class Representative of the Class, and designating the undersigned as Class Counsel;

B.　　　　Declare that IKO is financially responsible for notifying all Class members of

the problems with IKO products;

C.    Enter an order enjoining IKO from further deceptive advertising, marketing, distribution, and sales practices with respect to IKO products, and requiring IKO to remove and replace Plaintiff's and Class members' roofs with a suitable alternative roofing material of Plaintiff's and Class members' choosing;

D.    Enter an award in favor of Plaintiff and the Class that includes compensatory, exemplary or punitive damages, and statutory damages, including interest thereon, in an amount to be proven at trial;

E.    Declare that IKO must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of IKO materials, or order IKO to make full restitution to Plaintiff and the members of the Class;

F.    Enter an award of attorneys' fees and costs, as allowed by law;

G.    Enter an award of pre-judgment and post-judgment interest, as provided by law;

H.    Grant Plaintiff and the Class leave to amend the Complaint to conform to the evidence produced at trial; and

I.    Grant such other or further relief as may be appropriate under the circumstances.

**DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself and the members of the Class hereby demand a trial by jury of any and all issues in this action so triable.

Dated:  December 20, 2013        /s Scott W. Carlson
                                 Clayton D. Halunen
                                 Scott W. Carlson
                                 HALUNEN & ASSOCIATES
                                 1650 IDS Center
                                 80 South Eighth Street
                                 Minneapolis, MN 55402
                                 (612) 605-4098
                                 (612) 605-4099 (fax)
                                 **Co-Lead Counsel**

Robert K. Shelquist          Charles E. Schaffer        Jon D. Robinson
LOCKRIDGE GRINDAL            LEVIN FISHBEIN SEDRAN        Christopher M. Ellis
NAUEN PLLP                   & BERMAN                    BOLEN ROBINSON &
Suite 2200                   Suite 500                   ELLIS
100 Washington Avenue        510 Walnut Street           2nd Floor
South                        Philadelphia, PA 19106      202 South Franklin
Minneapolis, MN 55401        (215) 592-1500              Decatur, IL 62523
(612) 339-6900               (215) 592-4663 (fax)        (217) 429-4296
(612) 339-0981 (fax)         **Co-Lead Counsel**         (217) 329-0034 (fax)
**Co-Lead Counsel**                                      **Plaintiffs' Liaison Counsel**

**ATTORNEYS FOR THE NAMED PLAINTIFF**